NOT DESIGNATED FOR PUBLICATION

No. 120,621

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of C.M.W.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; GREGORY D. KEITH, judge. Opinion filed April 10, 2020. Affirmed.

*Stephen J. House*, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and BUSER, JJ.

BUSER, J.:  This is an appeal by C.M.W., a juvenile offender who filed a motion to modify his sentence. The district court denied the motion stating that it lacked subject matter jurisdiction to grant a modification. C.M.W. filed a timely appeal. Based on our reading of K.S.A. 2018 Supp. 38-2367(e), we hold that because more than 60 days elapsed after C.M.W. was committed to a juvenile correctional facility, his motion to modify sentence was untimely and the district court did not err in denying it. Accordingly, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2016, C.M.W., a juvenile, pled guilty to one count of aggravated criminal sodomy. Instead of committing C.M.W. to a term in a juvenile correctional facility, the

1

district court placed him in the custody of the Kansas Department of Corrections-Juvenile Services (KDOC-JS) with a recommendation for out-of-home placement.

In January 2017, C.M.W. violated his probation by not attending school. As a result, his intensive supervision officer (ISO) filed a motion to modify C.M.W.'s sentence from KDOC-JS custody to commitment to a juvenile correctional facility. The district court, however, ruled that C.M.W. would remain in KDOC-JS custody but imposed a 28-day sanction in a juvenile detention facility.

In June 2017, C.M.W. again violated his probation by leaving the out-of-home placement facility without authorization. As a result, his ISO again moved the district court to change his disposition from KDOC-JS custody to a direct commitment to a juvenile correctional facility. In response, C.M.W. filed a motion to modify his sentence, requesting his removal from out-of-home placement, and asking that he be ordered to a juvenile residential facility.

On August 1, 2017, following a hearing, the district court found that out-of-home placement was no longer in the best interests of C.M.W. and rescinded that placement. The district court then ordered C.M.W. to serve 60 months in the juvenile correctional facility with aftercare until he is 23 years old. C.M.W. appealed the new sentence, but our court affirmed. See *In the Matter of C.M.W.*, No. 118,604, 2018 WL 2749290 (Kan. App. 2018) (unpublished opinion).

More than a year later, on October 25, 2018, C.M.W. filed a motion to modify his sentence from a term in the juvenile correctional facility to conditional release. C.M.W. requested the sentence modification on the grounds that he was now 18, graduated from high school, completed his treatment, and had attained the highest level within the honors unit.

A hearing on the motion was held before the district court on December 13, 2018. C.M.W. argued that K.S.A. 2018 Supp. 38-2367(a) allowed him to file a motion to modify his sentence any time after the entry of an order of custody or placement of a juvenile offender. The State countered that under K.S.A. 2018 Supp. 38-2367(e) a district court only has jurisdiction to modify the sentence within 60 days after sentencing a juvenile to a correctional facility.

The district court denied the motion to modify sentence finding that it lacked jurisdiction to modify C.M.W.'s sentence under K.S.A. 2018 Supp. 38-2367(e). According to the district judge:

"As I read that statute, if a young person is placed on probation or pre Senate Bill 367 placed in the custody of Department of Corrections, it looks like at any time while the case is open, any party or, I believe, parent or current custodian could ask for modification.

"After—if a Respondent is directly committed to a juvenile correctional facility, as the Court is reading the statute, the court loses jurisdiction to do that modification within 60 days unless it is brought—the motion is brought by the secretary of corrections, and then the court may do that. And there's limited reasons for that modification.

"In that the time would have ran for that motion to be filed in late September 2017, the Court is making the finding [it] does not have jurisdiction to hear the motion and, therefore, will not go any farther on that."

C.M.W. filed a timely appeal.

ANALYSIS

On appeal, C.M.W. reprises the argument he made in the district court. He asserts that K.S.A. 2018 Supp. 38-2367(a) allows him or any party to file a motion to modify sentence any time after the district court has entered an order of custody or placement of a juvenile offender. C.M.W. contends the district court made an order of custody when it

3

sentenced him to commitment in the juvenile correctional facility on August 1, 2017. Thus, C.M.W. argues the district court had jurisdiction to hear his motion filed on October 25, 2018.

Even though K.S.A. 2018 Supp. 38-2367(e) restricts the district court's ability to modify the sentence after 60 days from committing a juvenile to a correctional facility, C.M.W. argues: "This subsection is simply stating that the Court may modify a sentence without a motion. Notice does not need to be provided to the current custodian or the placement of the juvenile offender or to each party to the proceeding."

In response, the State contends, based on a plain reading of K.S.A. 2018 Supp. 38-2367(e), that a sentence may not be modified after 60 days from the district court's order to commit the juvenile to a correctional facility. The State suggests K.S.A. 2018 Supp. 38-2367(a) only applies after an order of custody or placement has been made, but an order committing a juvenile to a correctional facility is not the same as an order for custody or placement. According to the State, C.M.W.'s "very broad interpretation of K.S.A. 2018 Supp. 38-2367(a) essentially does away with the necessity for subsection (e)."

This issue requires our court to interpret Kansas statutes. Our standard of review provides that interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Further, where there is no ambiguity, the court need not resort to statutory construction. 303 Kan. at 813.

The relevant portions of K.S.A. 2018 Supp 38-2367 provide:

"(a) *At any time after the entry of an order of custody or placement of a juvenile offender, the court, upon the court's own motion or the motion of the secretary of corrections or parent or any party, may modify the sentence imposed.* Upon receipt of the motion, the court shall fix a time and place for hearing and provide notice to the movant and to the current custodian and placement of the juvenile offender and to each party to the proceeding. Except as established in subsection (b), after the hearing, if the court finds that the sentence previously imposed is not in the best interests of the juvenile offender, the court may rescind and set aside the sentence, and enter any sentence pursuant to K.S.A. 2018 Supp. 38-2361 . . . .

. . . .

"(e) *Any time within 60 days after a court has committed a juvenile offender to a juvenile correctional facility the court may modify the sentence and enter any other sentence . . . .*

"(f) Any time after a court has committed a juvenile offender to a juvenile correctional facility, the court may, *upon motion by the secretary of corrections*, modify the sentence and enter any other sentence if the court determines that:

(1) The medical condition of the juvenile justifies a reduction in sentence; or

(2) the juvenile's exceptional adjustment and habilitation merit a reduction in sentence." (Emphases added.)

The plain language of K.S.A. 2018 Supp. 38-2367(a) states that any party may file a motion to modify the sentence any time after any entry of an order of custody or placement. It is unclear, however, whether the definition of custody or placement includes that of commitment to a juvenile correctional facility. Thus, a question is raised whether an order of custody includes an order committing a juvenile to a correctional facility since the juvenile would be in the custody of the Secretary of Corrections. Unfortunately, the Revised Kansas Juvenile Justice Code does not define custody or placement as discussed in K.S.A. 2018 Supp. 38-2367(a). But, other portions of the Code provide some insight.

5

K.S.A. 2018 Supp. 38-2361 provides a list of available sentencing and sanction options for the district court to impose. K.S.A. 2018 Supp. 38-2361(a)(12) states that a district court has the authority to order a juvenile to a juvenile correctional facility when the judge finds the juvenile poses a risk of harm to another or damage to property. The subsection provides:

> "(a) Upon adjudication as a juvenile offender, . . . modification of sentence pursuant to K.S.A. 2018 Supp. 38-2367 . . . or violation of a condition of sentence pursuant to K.S.A. 2018 Supp. 38-2368 . . . the court may impose one or more of the following sentencing alternatives for a fixed period . . . .
>
> . . . .
>
> (12) If the judge finds and enters into the written record that the juvenile poses a significant risk of harm to another or damage to property, and the juvenile is otherwise eligible for commitment pursuant to K.S.A. 2018 Supp. 38-2369, and amendments thereto, *commit the juvenile directly to the custody of the secretary of corrections for placement in a juvenile correctional facility or a youth residential facility*." (Emphasis added.)

The language in subsection (12) uses the terms *custody* of the secretary of corrections for *placement* in a juvenile correctional facility. This suggests that the terms custody and placement include a district court's commitment of a juvenile to a juvenile correctional facility. As a result, K.S.A. 2018 Supp. 38-2367(a) on its face would appear to allow a district court at any time to modify the sentence of a juvenile committed to a juvenile correctional facility.

That said, K.S.A. 2018 Supp 38-2367(a) is only one subsection of a statute that is comprised of several subsections. In particular, unlike the broad provisions of K.S.A. 2018 Supp 38-2367(a), which relate to juvenile dispositions generally, K.S.A. 2018 Supp 38-2367(e) and K.S.A. 2018 Supp 38-2367(f) relate to the specific circumstance of modifying a juvenile's sentence after commitment to a juvenile correctional facility.

6

Specifically, subsection (e) authorizes the district court to modify the sentence within 60 days after the court committed the juvenile to a correctional facility. On the other hand, subsection (f) authorizes the district court—without any time restriction—to modify the juvenile's sentence if the secretary of corrections files a motion to modify sentence provided that one of two specific conditions are present.

Considered separately, the meaning of these three subsections is clear. When K.S.A. 2018 Supp 38-2367(a) is read together with K.S.A. 2018 Supp 38-2367(e) and K.S.A. 2018 Supp 38-2367(f), however, ambiguity is apparent.

When a statute's language or text is unclear or ambiguous an appellate court may employ canons of construction to construe the Legislature's intent. *Barlow*, 303 Kan. at 813. Here, by using two canons of construction we eliminate any ambiguity in the meaning of the three subsections. First, when construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Keel*, 302 Kan. 560, 573-74, 357 P.3d 251 (2015). Second, a specific provision within a statute controls over a more general provision within the statute. *In re E.J.D.*, 301 Kan. 790, 794, 348 P.3d 512 (2015).

In reading K.S.A. 2018 Supp. 38-2367(a), (e), and (f) together, it appears the Legislature afforded the district court broad authority to modify sentences for juvenile offenders who are not committed to a juvenile correctional facility. By definition, these juveniles would not pose "a significant risk of harm to another or damage to property." K.S.A. 2018 Supp. 38-2361(a)(12). Since these juveniles ordinarily would not be considered serious offenders, the Legislature afforded the district court unlimited authority to modify their sentences.

On the other hand, commitment to a juvenile correctional facility is reserved for the more serious juvenile offenders. The Legislature allowed district courts to modify those sentences within 60 days—in effect, to permit a brief period of shock jail time while still allowing the possibility of a sentence modification. K.S.A. 2018 Supp. 38-2367(e). But after 60 days, the Legislature limited the district court's ability to modify the sentence to when the governmental authority in the best position to evaluate the juvenile's medical status and rehabilitation—the secretary of corrections—moves the court for modification based on the juvenile's medical condition or "exceptional adjustment and habilitation" K.S.A. 2018 Supp. 38-2367(f)(1), (2). This limitation on the district court's ability to modify a juvenile's sentence after 60 days reflects the seriousness of a commitment to the juvenile correctional facility and the unique ability of the secretary of corrections to be apprised of the juvenile's medical status and rehabilitation while incarcerated. As a result, reading K.S.A. 2018 Supp. 38-2367(a), (e), and (f) *in pari materia*, reconciles the three subsections into workable harmony.

Employing the second relevant canon of statutory construction, it is apparent that subsections (e) and (f) are specific provisions of K.S.A. 2018 Supp. 38-2367 which should control over the more general provision in subsection (a). See *In re E.J.D*, 301 Kan. at 794.

Applying these two canons of statutory construction to the issue on appeal, it is uncontroverted that C.M.W. filed his motion to modify more than 60 days after the district court entered the order of commitment to the juvenile correctional facility. K.S.A. 2018 Supp. 38-2367(f) identifies only one party that may request modification under these circumstances—the secretary of corrections—provided one of two conditions are met. Because the motion was out of time, the secretary of corrections did not file the motion, and one of the two statutory conditions was not asserted, the district court did not err in denying C.M.W.'s motion. See K.S.A. 2018 Supp. 38-2367(e) and (f).

Finally, as noted earlier, the district court predicated its ruling denying C.M.W.'s motion on jurisdictional grounds. For their part, the parties briefed the issue in the context of subject matter jurisdiction.

K.S.A. 2018 Supp. 38-2304(d) imparts jurisdiction to district courts in juvenile matters until that jurisdiction is terminated as provided by the statute. Subject matter jurisdiction "establishes the court's authority to hear and decide a particular type of action." *Chelf v. State*, 46 Kan. App. 2d 522, 529, 263 P.3d 852 (2011). Based on our reading of K.S.A. 2018 Supp. 38-2304(d) and (e), we are persuaded that the district court had jurisdiction to issue rulings regarding this juvenile matter. While it had jurisdiction, however, the district court was statutorily limited by the Legislature to modifying juvenile sentences under certain circumstances. In this case, because C.M.W.'s motion was untimely, the district court properly followed the statutory limitation and denied the motion.

In summary, while the district court had jurisdiction under K.S.A. 2018 Supp. 38-2304(d) to decide motions to modify juvenile sentences, it properly ruled that the motion was untimely, not filed by the secretary of corrections, and without meeting one of the statutory conditions required. See *Chelf*, 46 Kan. App. 2d at 531 (noting the difference between mandatory requirements of a statute and jurisdictional provisions; noting that a statutory requirement will not be deemed jurisdictional unless the statute itself reflects a clear indication that the Legislature wanted the requirements to be jurisdictional).

We hold the district court reached the correct result although it relied on the wrong reason. In this situation, we uphold the district court's decision. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015).

Affirmed.