NOT DESIGNATED FOR PUBLICATION

Nos. 123,542
123,543

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL A. HOWARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed December 17, 2021. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Cathryn Lind*, legal intern, *Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ATCHESON, J., and RICHARD B. WALKER, S.J.

PER CURIAM:  The district court revoked Michael A. Howard's probation after finding that he violated its conditions by committing new crimes. Howard appeals, asserting that the district court erred in finding that he committed new crimes and abused its discretion by choosing to revoke his probation rather than impose alternative sanctions. After a careful review of the record, we find no error by the district court when it found that Howard committed new crimes. We also find that the district court did not abuse its discretion when it revoked Howard's probation. Thus, we affirm.

1

In February 2020, Howard pled guilty to two counts of criminal possession of a weapon by a felon. Each count stemmed from a separate incident and the State prosecuted them as separate cases, but Howard's plea—and subsequent probation—encompassed both matters and they are consolidated in this appeal.

Both charges carried a presumption of probation, and the parties agreed that probation was appropriate. The district court followed the presumption and plea agreement, sentencing Howard to 18 months' probation with a 19-month underlying prison sentence in each case, with both sentences running concurrently.

About six weeks after sentencing, the district court issued a warrant based on allegations that Howard violated the conditions of his probation. The State alleged, among other violations, that Howard committed the new crimes of battery and making a criminal threat during an incident on July 19, 2020. The State proceeded only on these two alleged violations, and the district court ordered the others withdrawn.

The district court held a hearing on the alleged violations, which stemmed from an argument that Howard had with his girlfriend at her apartment complex. Two witnesses, Victoria Carlile and Anna Hailey, described arriving at the complex—where Carlile lived—and seeing Howard and his girlfriend arguing outside. Both witnesses had seen Howard at the complex before and recognized him. It was late at night and Howard was screaming, so Hailey approached and told him to be quiet. Howard then got angry with Carlile and Hailey, saying he had a bomb and threatening to blow up the apartment complex and kill both women.

Carlile testified that Howard tried to strike her but missed. Howard then began yelling at Hailey, and his girlfriend got between the two. According to Carlile, Howard

2

swung past his girlfriend and struck Hailey in the face. Hailey testified that, in the commotion, Howard was flailing around and swung his hand at her, hitting her in the mouth with the back or side of his hand. Hailey suffered a small cut on her lip from the blow.

Howard disputed Carlile's and Hailey's version of events. He testified that an argument with his girlfriend escalated, and he tried to leave the complex. But he claimed that a crowd of people—including Carlile and Hailey—blocked him from fixing his bicycle and leaving. There was a commotion, and Howard testified that his girlfriend—not Howard—struck Hailey.

The district court believed Carlile's and Hailey's version of events and found that Howard violated his probation by committing new crimes—specifically, criminal threat and battery. The district court then revoked Howard's probation in each case. Howard appeals both revocations, which are consolidated in this appeal.

ANALYSIS

In his appeal, Howard asserts that the district court erred in finding that he violated his probation. He points to inconsistencies in Carlile's and Hailey's testimony and argues that these inconsistencies render the evidence insufficient to find a violation. Howard also asserts that the district court abused its discretion when it revoked his probation because sending him to prison cuts against the purpose of the graduated sanctions statute.

Probation is "'an act of grace'" that the district court grants as a privilege, not a right. *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). Revoking a defendant's probation involves two distinct inquiries by the district court: (1) a factual determination of whether the defendant violated a probation condition, and (2) if so, a discretionary

3

determination of whether to revoke probation. *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 4, 182 P.3d 1231 (2008).

The State has the burden to prove a probation violation by a preponderance of the evidence. *State v. Lyon*, 58 Kan. App. 2d 474, 478, 471 P.3d 716, *rev. denied* 312 Kan. 898 (2020). When a district court determines there was a violation, we review that finding for substantial competent evidence. 58 Kan. App. 2d at 478. Substantial competent evidence is "'such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.'" *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). In conducting our review, we do not assess witness credibility or reweigh the evidence. *State v. Talkington*, 301 Kan. 453, Syl. ¶ 3, 345 P.3d 258 (2015).

Our Supreme Court has held that probation can be revoked based upon commission of another crime even if the defendant was never charged with the crime or was charged but later acquitted. *State v. Rasler*, 216 Kan. 292, 295, 532 P.2d 1077 (1975). And probation may be revoked under a preponderance of the evidence standard, even as to new crimes, rather than requiring proof beyond a reasonable doubt. *Inkelaar*, 38 Kan. App. 2d at 315.

In this case, substantial competent evidence supports the district court's determination that Howard violated his probation. The district court heard testimony from Carlile and Hailey, who both described Howard threatening to blow up the apartment complex and then striking Hailey in the face. Although Howard denied doing so, the district court found that Carlile and Hailey were more credible. We cannot reassess the witnesses' credibility, and a reasonable person could find that Carlile's and Hailey's testimony was enough to show that Howard violated his probation by making threats and striking Hailey.

4

Howard argues that contradictions in Carlile's and Hailey's testimony make it so that no reasonable person could agree that the State proved a probation violation. Howard contrasts Carlile's testimony—stating he swung around his girlfriend to hit Hailey—with Hailey's statement that Howard was directly in front of her. Howard also contrasts Hailey's statements that he was "'flailing'" and that he struck her with "'a full-on straight punch.'"

These distinctions are unpersuasive. Carlile and Hailey had consistent testimony about the central incident:  They asked Howard to be quiet, he threatened them, there was a commotion, and Howard struck Hailey in the face. The testimony Howard assails is not inconsistent, but merely shows slight differences in how the two women perceived the incident. Hailey got hit in the face amid a commotion; Carlile watched it happen. Hailey noted that the commotion made it difficult to know the exact details of how she was hit. She explained, "I don't remember exactly what happened. We were just too close, and he was like screaming and flailing, and I got hit in my mouth." Carlile's testimony filled in some details, because unlike Hailey, she was not getting punched while she perceived the event. But both women were clear that Howard struck Hailey in the face. And Hailey also explained that because Howard was flailing when he tried to punch her, he only connected with part of his hand. A reasonable person could accept their combined testimony as sufficient to show it is more likely than not that Howard committed battery. Finding otherwise would require us to assess witness credibility and reweigh the evidence.

Additionally, the inconsistencies Howard asserts only relate to one of the probation violations—battery. The district court also found that Howard committed a criminal threat based on evidence that he threatened to blow up the apartment complex. Howard points to no inconsistencies in the witnesses' testimony about this violation, which itself is a sufficient basis to revoke probation. Because substantial competent evidence shows that Howard committed battery and criminal threat, the district court did

5

not err when it found by a preponderance of the evidence that Howard violated his probation.

Next, Howard contends that the district court abused its discretion when it determined it would revoke his probation rather than imposing other sanctions. When the State proves a violation, we review the decision to revoke probation for an abuse of discretion. *Lyon*, 58 Kan. App. 2d at 478. The district court abuses its discretion if no reasonable person would agree with its decision or its decision is based on a legal or factual error. *State v. Reeves*, 54 Kan. App. 2d 644, 658, 403 P.3d 655 (2017).

Howard argues that the district court abused its discretion when it bypassed other sanctions and went directly to revocation. He asserts that the Legislature enacted the graduated sanctions provisions to reduce the prison population by having intermediate sanctions available for first-time violators like Howard. According to Howard, the district court's decision to revoke his probation flouts these legislative goals.

The district court did not abuse its discretion. The relevant statute makes clear that a district court "may revoke the probation . . . without having previously imposed a sanction" if the defendant committed a new crime while on probation. K.S.A. 2019 Supp. 22-3716(c)(7)(C). Regardless of Howard's arguments about the policy shortcomings of Kansas' probation revocation statute, it gives the district court the ability to revoke probation if the defendant committed a new crime. And a reasonable person could agree with the district court's decision to do so here. The evidence showed that Howard, while on probation for weapons convictions, threatened to blow people up with a bomb before striking someone in the face—all in response to someone asking him to be quiet. This incident also occurred less than two months after beginning probation. A reasonable person could agree that Howard was not amenable to probation based on this conduct and thus that revocation was appropriate. Revocation was also not based on a legal or factual error. The district court did not abuse its discretion when it revoked Howard's probation.

6

Affirmed.